**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chiropractic Benefit Services, Inc., et al., <br> Plaintiffs, <br> vs. <br> Compass Insurance Agency, Inc., et al., <br> Defendants. | No. CV-08-496-PHX-FJM <br><br> **ORDER** |

The court has had under advisement CBS's request for a temporary restraining order against Compass. We have considered the amended application for temporary restraining order (doc. 9), the declaration of Terry Rondberg (doc. 3), Compass's oversized response (doc. 10), and CBS's reply (doc. 15). These are our Findings and Conclusions under Rule 52(a), Fed. R. Civ. P.

The standard for granting a motion for temporary restraining order or preliminary injunctive relief in the Ninth Circuit is well-known. Plaintiff must show a likelihood of success on the merits and the possibility of irreparable injury, or show that serious questions going to the merits are raised, and the balance of hardships tips in favor of the moving party. *Save Our Sonoran Inc. v. Flowers,* 408 F.3d 1113 (9th Cir. 2005).

CBS is an organization that permits chiropractors to buy group insurance. It entered into an insurance brokerage agreement with the defendant Schaefer-Smith-Ankeney

1  Insurance Agency. CBS acquiesced in Compass's assumption of the contractual obligations
2  of Schaefer-Smith.

3      CBS terminated the agreement and intends to substitute another broker, Scali, for
4  Compass. The other broker claims to need Compass's underwriting information in order to
5  continue placing business with CNA Insurance.

6      CBS claims that Compass refuses to turn over its "Book of Business" so that Scali can
7  do its work. CBS claims that the Book of Business belongs to it under paragraph three of the
8  insurance brokerage agreement and includes "the dates of the insurance policies, the names
9  of the insured, the policy expiration dates, the amount of insurance, information on
10  premiums, and other terms and details of insurance." *Amended Application* at 6 n.3 (doc. 9).

11      Compass acknowledges that CBS owns the Book of Business. Compass concedes
12  that CBS is entitled to "a copy of the policy issued to the insured, the date of expiration, the
13  amount of insurance, premiums, property covered, and terms of insurance." *Compass's*
14  *Response* at 7 (doc. 10). It claims that it has consistently provided this information by
15  sending CBS the "Bordereau Report." However, Compass asserts that the Book of Business
16  does not include the broker's underwriting information, rating information, computerized
17  records of transactions, and raw computer data. By its reply, CBS contends that the client
18  files and patient charts come within the scope of "Book of Business," because how "else can
19  a new broker process renewals." *Reply* at 4 (doc. 15).

20      We note that CBS's claim to underwriting information is based solely on its
21  contention that such information is within the scope of "Book of Business" and yet "Book
22  of Business" is nowhere defined in the parties' extensive written contract. It is vaguely
23  referred to as "professional liability insurance" and "shall only include policies sold during
24  the term of this Agreement." *Declaration of Terry Rondberg, Ex. A* at 3 ¶ 3 (doc. 3). Now,
25  it may well be that CBS is entitled to the underwriting information or that Compass is
26  obligated to share that information with a substitute broker, but any such obligations do not
27  appear to arise out of the contract which is the basis of CBS's claim. Instead, they may arise
28  out of insurance statutes, other contracts, or by operation of law. In any event, we cannot say

1  that CBS has shown a likelihood of success on the merits of its claim that underwriting
2  information is within the scope of the definition of "Book of Business" under the terms of
3  the agreement.  And, while a serious question going to the merits has been raised, we cannot
4  say that the balance of hardships tips sharply in favor of CBS.  CBS should have given
5  thought to the transition of underwriting information from one broker to another before it
6  terminated its agreement with Compass.  Moreover, although the substitute broker claims he
7  needs the information, there is nothing in this record directly coming from CNA to suggest
8  that it will not continue to write this business for the members of CBS.  It seems quite likely
9  that CNA already has this information.

To be sure, Compass appears to be taking a hard-line position in this case.  It characterizes the underwriting information as its work product, processes, and modes of doing business.  We suspect that underwriting information necessary to transition to a new broker can be made available to CBS without compromising the integrity of Compass's proprietary processes.  Indeed, although the parties make no such contention here, it seems likely that Compass probably has a duty elsewhere in the law to provide this information to at least the insurer, CNA, and the insureds who buy their insurance through the CBS group. At all events, the complexities here do not lend themselves well to interim injunctive relief.

For all of these reasons, IT IS ORDERED DENYING CBS's "Amended Motion for Temporary Restraining Order" (doc. 9).  IT IS FURTHER ORDERED DENYING the "Application for Provisional Remedy" (doc. 9).  This is without prejudice to the right of CBS to seek preliminary injunctive relief in the event Compass fails to deliver to it all of the data which even Compass concedes is within the scope of "Book of Business."

DATED this 25th day of March, 2008.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

- 3 -